Good morning. My name is Anne Traum. I'm representing Richard Jackson this morning. I would like to reserve two minutes for rebuttal, and I will try to keep my eye on the clock on the time. My client claims that his trial counsel was ineffective for failing to consult on a directive appeal and then file a direct appeal. I think the best place to explore this claim, because the record is quite thin in terms of transcripts, is the sentencing hearing. It was clear, or it should have been clear to anyone who was in the room that day that my client was extremely unhappy with what was happening in his case and would have wanted to appeal. My client moved to withdraw his guilty plea. He repeatedly professed his innocence. He said he wanted to go to trial. That was the only place where he could prove that he was innocent. He blamed his counsel for essentially pressuring him into the plea. His own counsel said with respect to one of the victims in this case, my client's daughter, no, it never happened. That's at 226 of the record. With respect to the other one, he repeated that it was an Alford claim. He just could not say. He said, I don't know if he did it, just period. And then the court itself, recognizing that there was a motion to withdraw a guilty plea, he denied the motion to withdraw a guilty plea. And then the court specifically said that the transcript will be made that will go up to the Supreme Court, let the Supreme Court decide whatever they want to decide. At the end of that hearing, with my client going on and on, I mean, the trial court gave him the floor to express his extreme and painful dissatisfaction with what had happened in his case. It should have been clear to his trial counsel that either this person wanted to appeal or needed to be consulted on his right to direct appeal, which he had not waived in his guilty plea. Okay. Counsel, where do we find the, I understand your argument that he was very unhappy with what happened, and therefore, that demonstrated that he wanted to appeal. That's your argument, isn't it? The actually, it didn't demonstrate that he wanted to appeal. The test under Flores-Ortega is whether, is it that there is a constitutional duty for trial counsel to consult on the right to, to advise the client on the right to appeal if a rational defendant in this, in this situation would have wanted to appeal, or this particular defendant reasonably demonstrated in an interest. All right. I understand. Let's go to the second prong. That's what I'm asking about. You're saying that the fact that he made it obvious that he's unhappy amounted to a demonstration that he wanted to appeal. That's your argument. I think, yes. I think he would definitely – I think he actually fits either of those categories on the consultation. All right. Well, let's take the second prong. Let's, let's put aside for a moment whether a rational defendant would want to appeal and talk about the second prong. Where do we find a Supreme Court precedent that tells us clearly that if you act unhappy with what's happening, that demonstrates that you want to appeal? I think that you find – I'm not sure that I can – there is a factually identical case on point, if that's what Your Honor is looking for, but I think the answer is in Flores-Ortega itself. Because Flores-Ortega doesn't only give us the test. It also instructs that in the vast majority of cases, defense counsel should consult. They have a constitutional duty to consult. So that sort of sets up a presumption that consultation is the preferred practice. I don't think there was any ambiguity here that this is the kind of client who would want to, who would want to appeal, who was so dissatisfied with the proceedings that it would raise a red flag to any person in that room that day. And you also have here the added evidence from the trial court saying, this is – we're going to prepare a transcript, this is going to the Supreme Court, which in a client's mind triggers that either something is automatic or it's going to happen in my case. Well, your short answer to my question is Flores-Ortega is where we find the answer. I think Flores-Ortega gives us all of the guidance that we need to resolve this case. And I think that it sets up a duty, an onus on defense counsel, which is critical in this case because of the way that the state law played out. It sets the onus on defense counsel in the vast majority of cases to make that inquiry. And it also particularly talks about pro se defendants not being able to sort of understand what's a good issue on appeal, that kind of thing. So I think both of those are operative in this case. Because what ends up happening is that the Nevada Supreme Court applies its case law, which is a different test from Flores-Ortega. It is not as protective of defendants' rights. And it sets it up in a different way. In Flores-Ortega, you have the burden on defense counsel in the vast majority of cases to consult. In Nevada, the burden is on appellant to request an appeal or to demonstrate that they have a claim with a reasonable likelihood of success. That is a heavy burden. I understand the difference between the Nevada approach and the Supreme Court approach. I guess what I don't understand is how we decide this is one of the vast majority of cases. That's what you're asking us to do. What standard do we use to make that decision? This is one of the vast majority of cases. Well, I think one thing that you had in Flores-Ortega and that you were going to, that this court ordered in Sandoval Lopez, a 2255 case on the same issue, is you had an evidentiary hearing to find out what defense counsel understood after that hearing. We have never in this case had any evidence rebutting my client's allegations. Trial counsel has never — there's never been an affidavit. There's never been a reason even proffered by the State as to why no notice of appeal was filed. So you don't have the situation as you had in Flores-Ortega where you would have an evidentiary hearing record to review where you find out from the Petitioner and defense counsel what happened, what was going on, were there instructions — was there a request, were there contrary instructions, that kind of thing. And that's what's missing in this case. Let's talk about the request a moment. In the State courts, there was no allegation that he asked counsel to appeal, as I understand it. Correct. That's correct. And the district court dismissed that claim as unexhausted. And you don't, in your principal brief, argue that there was any error in that dismissal, do you? No. And the reason is that we're not arguing exhaustion on that claim because we think it's adequately preserved that he adequately exhausted a Flores-Ortega claim in the claim that the district court reviewed on the merits. Now, we're — If he asked to have a notice of appeal filed, then it didn't happen. That's clear. That's clear. But that's different from — that's a little bit different claim than — It is a slightly different claim, although I would argue that it does not fundamentally alter the nature of the claim because it is a Flores-Ortega claim no matter how you slice it, although we fully concede that he did not exhaust the request fact in State court. And I would — so I understand that that is a problem, but I think in this particular case that he's entitled to an evidence you're hearing at a very minimum. I actually think he would be entitled to the writ outright on the — on his claim that there was a constitutional duty to consult here because this is — there was a lot said at that sentencing hearing, much more than in a typical case. And it is so clear that someone in this defendant's situation would have not only had a right to appeal the denial of the motion to withdraw his guilty plea, but that on this record he would have wanted to. And he, by the way, was entitled to an evidence you're hearing in the district court with counsel on that issue. That's usually how this plays out when it's properly done, is that he actually — it's like a mini ineffective assistance counsel claim that happens in the trial court at — you know, right before sentencing on this particular issue. So we have none of that in this case. The record is very thin. But I do think that the — what was spoken by everyone, counsel, petitioner, and the public, is sufficient in this case to trigger the constitutional duty of consultation. Could you just clarify one thing for me? And I'll make sure you get an extra minute for rebuttal. But the waiver of the right to appeal under Nevada law, having signed that, was he still allowed to appeal? He was still allowed to allege — there's a case called Mitchell. You're still allowed to allege that your appeal was unconstitutional, that — You mean your plea? — that your plea was unconstitutional, and that would fold in your Boykin claim under federal law. It's the same standard in state court under Bryant and Mitchell, the motion to withdraw a guilty plea case. And also, I think it would fold in a Hill v. Lockhart claim, which is also a basis for unconstitutional plea. And by the way, Nevada's Strickland standard is identical. So all the more reason that it would fold in those. You are allowed to appeal the constitutionality of your plea. And just a note on the related claim, the state court defaulted him on his claim that his motion to withdraw a guilty plea — they said that he couldn't bring that claim in his state habeas case. That was just clearly wrong because he was alleging ineffective assistance of counsel all along, and he was allowed to bring that on direct appeal. He was also allowed to bring that in post-conviction. It ends up collapsing pretty much into the same thing. And can you bring that claim under Nevada law on direct appeal, even where you have no record on the issue? No, that's more difficult. You're usually required under the state law to have moved to withdraw your guilty plea before sentencing, which is what happened here. Well, here he moved to withdraw it, but you have no record, as I see it, that would support an ineffective assistance of counsel claim. How could you — how do they proceed in Nevada to hear a claim of that kind on appeal? Well, often that is happening, as I was saying, at the district court. So in — he was not appointed counsel separately and given an evidentiary hearing, which is often the procedure that happens in the district court before you even get to an appeal. You're talking about the state district court or the federal district court? In the state district court, when you move to withdraw your guilty plea before sentencing, you are often given a counsel and an evidentiary hearing on that specific case — issue before you're even sentenced. This collapses here because he moves, and he just argues it himself at the sentencing. Okay. But you're telling us that Nevada courts on appeal would have heard his ineffective assistance claim on the merits, notwithstanding that. They do. I mean, they do in the sense that they will review the validity of the claim on the entire record. I've had cases where there's been an ineffective assistance of counsel claim, pressure from the — for example, pressure from the client, absence of sufficient investigation to get me to plead guilty, and they've reviewed that on direct appeal. That's my understanding of how — But no record, whatever, as to whether he was pressured or not pressured, though. Well, he says at the sentencing court that he was pressured. He says in the sentencing — in that transcript he was pressured. That he had a few minutes. He said he was innocent. His counsel said, well, there's a lot of innocent people who go to prison. Just get the best deal that you can. That's what he said. So there certainly is — there are allegations there. He also preceded this with a motion to dismiss his counsel, which was the second motion. But in that motion to dismiss, which is not fully in the record in this case, so it's difficult for any court and myself to review that adequately, but the — but that was counsel had failed to investigate, failed to communicate with him, failed to, I think, talk to the witnesses and get more stuff. I think that it was in there. Okay. Thank you. Thank you very much. Good morning, panel. My name is Rain Holson. I represent the respondents of L.E.A.S. I think I'd like to spend a little bit of time clarifying the claim that's before the court or that's been certified for the court, and that claim appears in the verified petition at ground one where the petitioner alleges his claims of ineffective assistance to counsel. There he alleges in essentially one or two sentences that he was not advised by his attorney of his rights to appeal. That's the claim that's been presented to the lower district court, and it's the same claim that was presented to the state courts. Any claim that's being presented now that appeared suddenly in the counsel petition before the Ninth Circuit that counsel did not consult with the defendant about his appeal rights is not properly before this court, and it wasn't properly before the district court, because in essence, if it's never been presented, those are legally significant facts that were never presented to the state court and would also have to have been exhausted in order to be before the district court. Therefore, those claims that are the new allegations that have been presented to this court, that counsel did not advise me of my appeal rights, I requested to appeal and counsel didn't appeal, those final two allegations are not properly before this court. And the problem with that is beyond the fact that that now brings an exhausted claim that this court can't consider, it also raises a little bit of suspicion as to the verity of those allegations. If counsel, if this proper person, defendant or petitioner, knew of these allegations, he certainly would have put them in his petition. So we're left with the claim, counsel didn't advise me of my appeal rights. And now the next issue arises as to whether when the Nevada Supreme Court disposed of that issue, whether that claim is entitled to deference, because we're here on a federal habeas claim, and whether that decision is entitled to deference is significant. And in fact, the panel that approved this particular issue for appealability was interested in whether the Nevada Supreme Court's decision comported with the rationale and the result of Roe versus Flores-Ortega. I submit that we don't need one part of Roe versus Ortega, Flores-Ortega, that wasn't mentioned by my adversary, is that the first Roe asks whether counsel did indeed advise or consult with this client about an appeal. And very similar to a case that came out of this court, U.S. versus Sandoval versus Lopez, Sandoval-Lopez, we have very similar facts that relate to notice, consulting, and informing the client about his appeal. First, we have a guilty plea. We have a guilty plea where this defendant gave up his rights to appeal, other than a very few rights to appeal, which Judge Cox, I believe, was asking about. And in Nevada, that's a very slim amount of claims, and it's generally jurisdictional claims that can be brought, even though counsel has, even though the defendant has waived his right to appeal. He pled guilty. He waived virtually all claims to appeal. He signed a guilty plea agreement. He was canvassed by the judge, the judge who took his plea, who specifically asked him, did you read your agreement? Did you agree with it? Did you consult with your attorney before signing this agreement? Did your attorney consult with you about the rights that appear in this guilty plea and the rights that you're waiving? He said, yes, I did, and I agree with it. Well, your sister makes one argument, as I understand it, in opposition, and that is that he could have appealed on the ground that he had ineffective assistance of counsel and that the Nevada appellate court would have reviewed that claim. Well, I take issue with that allegation or that argument. In Nevada, as you were alluding to, it's virtually impossible for a direct, it is impossible for a direct appeal court to review questions of fact. To have a claim of ineffective assistance of counsel presented to the court in Nevada, it has to be presented, especially in a guilty plea situation, through a post-conviction petition where the lower court can take evidence and build a record and then send that up to the upper court. Such claims of ineffective assistance of counsel could not have been presented on a direct appeal. He moved to withdraw his guilty plea. That's correct. Correct. And embedded in that motion was his claim that he didn't get, he didn't have proper assistance from his counsel, correct? That still wouldn't have given him the right to bring that claim. No, I'm not talking about a separate, independent, ineffective assistance of counsel claim. Let me just add, would he have had the right to have his motion to withdraw his guilty plea reviewed by the Nevada Supreme Court even in light of his waiver of his appeal rights? I believe so. Okay. But that is a, that would be a direct appeal. A timely notice of appeal to protect that right. Correct. And keep in mind, in part of the, part and parcel of the guilty plea agreement, the agreement that he had was that if he didn't get the benefit of his bargain, the sentence that he expected to get, he would be allowed to withdraw his guilty plea. You don't think counsel would be on notice in those circumstances that he was, you know, he entered an Alford plea. He moved to withdraw his guilty plea. Correct. Complaining about his lawyer. Obviously he's unhappy, but he's been notified by the court. You don't think, you know, that counsel would, you know, would think that he might have an obligation to tell him, hey, look, you know, you can, you can appeal and here's what you have to do. And I believe he's already told him that. Already told him that. And it's a slightly different, maybe under that slight intricacy, that's slightly different than Sandoval Lopez. But in that court, in that here, in that case, this court stated, I think as Judge Kleinfeld stated, that once counsel, once the defendant is on notice, and this is a interpretation of the Roe case, once the defendant's on notice and has been consulted about his rights and his rights to appeal, he has to do something to let this counsel know he wants to appeal. Just because Judge Bonaventure suggested that this was going to go to appeal and now, now somehow magically our defendant is believing that he's going to get an appeal, I think that kind of stretches the imagination. He's consulted with counsel all along and he's agreed on the record that he consulted with counsel. Well, your sister again says Flores Ortega is where we find that, clearly. Excuse me? Your sister argues that we find from Flores Ortega, clearly, that it suffices to demonstrate you're unhappy in the trial court. And this gentleman certainly was unhappy and he demonstrated that if that satisfies the rule of Flores Ortega, does it not? Well, I don't believe it satisfies Roe versus Ortega, the Roe case, especially in light of the, we have to keep in mind there's two parts to Roe that's an issue. If he's got notice of his appeal rights, the Sandoval court, this court, Judge Kleinfeld said that once he's got notice of his rights and he's been consulted, he has to do something, he has to tell his counsel to do something or counsel has to fail to do something before he can make a colorable claim. Here we don't have that. All we have is the counsel failed to advise me and the record's different with that. Sandoval's also told us that once that, once that. Well, there is no, there is no, nothing in the record here and correct me if I'm wrong, where we know that counsel advised him of his right to appeal. Oh, I think we clearly do that in the guilty plea agreement, in the canvas on the guilty plea. How's that? I don't understand how that's different. It wasn't different in Sandoval versus Sandoval Lopez. That's how this court determined that he had, that he had notice of his appeal rights. Did he know that he had 10, how many days in Nevada do you have to perfect an appeal? 30 days. Like in the district court here, it's 10 days. 30 days. He does have a much longer. Did he know in the record that he told him you have 30 days within which to perfect your appeal? Got a good point. Also, Judge Kleinfeld noted that if there was anything to that particular defendant's claims, why did he wait one year before he acted upon it? And we have a defendant here that waited one year and two months. And he says in his, in his, some of his literature that he attaches to his petition that, well, as soon as I got to prison, I found out when I talked to an inmate law clerk that I had this right and I, that I lost it. And it's also, I mean, sounds a little bit more like pleader's remorse to me. The state court made a finding, did it not, that he knew he had the right to appeal. Correct. And at that point, it becomes the petitioner's burden to show by clearing convincing evidence that he did not have notice of that right. My time is up. If you have no further questions, I'm finished. What was done with the claim of inadequate investigation as an ineffective assistance? Excuse me? Inadequate investigation. Where's my stand on that? Well, I believe that the claim that appears in the verified petition is a conclusory claim that doesn't, that lacks enough specificity under Rule 2C to allow the court to go forward. I believe that it should never have been certified for review in this court. Okay. Thank you. I do want to be very brief, and I just want to touch on a few things. First of all, there is the difference between notice, being told that there is a right to appeal, and consultation, which is what Flores-Ortega requires, which is discussing with the client the pros and cons of what to do about an appeal. Is he still making the argument that he did not have notice of his appeal rights? Well, I think that his allegation, we have to remember, this person has never had counsel. He didn't have counsel in the district court either to figure this out, to properly allege it as this court might want to see it. Let me ask, are you making the argument, then, that he did not have notice of his right to appeal? Notice in the sense that he did not understand what you needed to do to file an appeal. Okay. That's a little different. My question is — And if you look at the guilty plea, it's very confusing. Excuse me. Let me ask a question.  I apologize. Are you arguing that he did not have notice that he had a right to appeal? No. I think that he had — there is some notice in the record, because it's in the guilty plea, that he reserved a right. And whether my — I don't think my client understood what you need to do to file an appeal. So I don't think in any way that any consultation, as that's meant under Flores-Ortega, has happened in this case. Okay. I view consultation as a different issue. And apparently you do, too. Well, I — but I think it's worth saying here that the Nevada Supreme Court understood this to be a Flores-Ortega-type claim under its own law. And the district court understood it to be that as well. And I think that he has sufficiently invoked Flores-Ortega apparatus to govern this particular claim. I do want to point out that this Court needs — can look at the State court case, Mitchell v. State, which I've cited in my briefing, about what the Court does when it reviews a motion to withdraw a guilty plea, that it reviews the entire record. And finally, I want to point out that the prejudice under Flores-Ortega is not that you would have had a specific meritorious claim reviewed, but that you forfeited the process. Sandoval-Lopez makes that extremely clear. So does Flores-Ortega. And that's what he lost here. It was clear on that day that this is exactly the type of person who is so dissatisfied with what has happened that he wants to go up, that this trial court actually talks about a transcript going to the Supreme Court. You have a right to counseled appeal. He didn't forfeit that — he didn't forfeit that right by virtue of his — of his limited waiver to review this kind of claim and others, whatever he could think of. And he doesn't have to show that it was a meritorious claim. He just has to show he wanted that. He didn't get it. Thank you very much. I appreciate the extra time. Okay, thank you. Matter will be submitted. We appreciate your arguments.
judges: Canby, Cox , Paez